Good morning, may it please the court. My name is Betsy Stevens for the appellant Teresa Annis. There are a number of issues in this case, as you can see, but I would like to draw your attention to one in particular, and that's the opinion of Dr. White Chu. Now, this doctor said that Ms. Annis may need to rest for five minutes every half hour because of her neck and back pain. Now, at the hearing, the hearing attorney asked the vocational expert to consider resting for five minutes as if that meant she would need to lie down. And in response, the vocational expert said that Ms. Annis would not be able to perform the identified jobs. Now, in the RFC finding, the ALJ accepted Dr. White Chu's opinion, but when the ALJ went to translate those limitations into the RFC, the ALJ interpreted rest for five minutes to mean that she could continue working, but she just needed to change positions from... Sorry, I'm really nervous. Take a deep breath. Have some water. Have some water. You could rest for five minutes. Thanks. Take a glass of water. Here you go, your co-counsel, I mean, your worthy opponent here. All right. Where were you? Okay. So the ALJ interpreted rest for five minutes to mean that she could continue working for those five minutes, and she just had to change positions from sitting to standing. So why isn't that a reasonable interpretation of White Chu's analysis, or at least in context, which is I understand opposing counsel's arguments. In context, you look at what White Chu said, and that she could work, stand and or walk for six hours during an eight-hour day, and then it talks about sit and stand to ease the neck and back pain, and obviously the ALJ said, given the context, I don't interpret rest here to mean lying down flat. I interpret it as relieving, either sitting or standing, relieving the tension on her neck and back. And so why isn't that interpretation a reasonable one? Well, there's just a lot of room between the two extremes of needing to lie down for five minutes and being able to continue working and just change positions. And the problem is that we don't know what the doctor meant by rest for five minutes. And obviously a lot hangs on the meaning of that rest for five minutes, because it changes the vocational expert's answer as to whether she can do those jobs or not. So I want to make sure I understand, because I've got your brief in front of me, and I have just to clarify Judge Yakuta's question. Are you arguing that the White Chu assessment means that rest means lie down? Or, as you say in your brief, after reciting that part of White Chu, you say it is one thing to alternate positions while continuing to work and is it quite another thing to rest for five minutes every half hour? At a minimum, it was error for the ALJ unreasonably to conclude that rest means merely changing positions. Logically, rest is not the same thing as continuing to work while changing positions. The only reasonable interpretation of the word rest is that it means stop working and take a break. That's different from lying down. Or are you saying that lying down and taking a break equate and therefore the V.E.'s testimony about lying down means that even if it's taking a break, then the V.E. testimony of no jobs would be controlling? Well, what we're saying is that it could be either of those things or something in between. And at minimum, what we would like to see is for this case to be sent back so that the ALJ can recontact Dr. White Chu and clarify what the doctor actually meant by rest for five minutes. And until we resolve that question, we can't know whether the ALJ's interpretation or the attorney's interpretation or some middle ground is actually what the doctor meant. So, I mean, we also contend that the ALJ improperly rejected Dr. Gilmour's opinion and Ms. Annis' testimony and that of the lay witness. But even if the court doesn't agree with us on those points, the ambiguity in what rest for five minutes actually means that at minimum we need to send this back so that we can clarify that with the doctor. And unless the court has further questions, we'll rely on the briefs for the rest. Okay. Thank you. You can take a rest for a minute. Good morning. May it please the court. Nicole Jubaley for the commissioner. Substantial evidence supports the commissioner's final determination and we ask that this court affirm. Jumping directly to the comment that opposing counsel addressed and that's with regard to Dr. White Chu's opinion. Dr. White Chu said that plaintiff may need to rest every half an hour for about five minutes given the possible degenerative joint disease in her back and neck. And there's a number of issues with this. First of all, it was plaintiff's attorney, or Ms. Annis' attorney rather, who stated that rest was the equivalent of lying down. It's not something that Dr. White Chu ever said. It's not an interpretation that the ALJ found to be credible. And Ms. Annis herself actually referred to the term rest as sitting down in the context of walking for a long time while doing holiday shopping. In contrast, Dr. White Chu said that she could actually stand six hours, stand or walk six hours for an eight-hour period and sit without restriction. And so while she might benefit from changing positions in her hearing testimony, she actually said that she could sit for about an hour and then she may need to get up and stretch. We interpret that. The commissioner properly interpreted these restrictions and encompassed them with a sit-stand option in the residual functional capacity. And given that, it was ultimately found that she could do other work at Step 5. Do you disagree that that language is ambiguous, the sentence she may need rest every half hour for about five minutes? I don't agree that it's ambiguous, Your Honor. I believe that the ALJ's interpretation is valid given the context, given the whole of the record. The ALJ came up with a rational interpretation and under this Court's precedent, the ALJ's rational interpretation, even if it's not the only rational interpretation, should be the interpretation that this Court affirms. So we therefore submit that Dr. White Chu's opinion was rationally interpreted and that this Court should affirm on that opinion. Now, I'm happy to discuss the other medical evidence. Let's finish up on that because I'm looking at what the White Chu said. She may need to rest every half hour for about five minutes given the possible degenerative joint disease in her back and neck. He has said before then she could stand and walk for six hours out of an eight-hour day, but then he qualified it. Yes, Your Honor. Correct? Yes, Your Honor. She may need to rest every half hour for five minutes. And then she goes on to say she can sit without restrictions, but it would also benefit from standing up every half hour for about five minutes to stretch out her neck and back. Yes, Your Honor. So you're saying that the ALJ, by not putting in the rest every half hour, accommodated it by the sit-stand option? Yes, Your Honor, because How does that work? Because if you're sitting and standing, you're saying that that then brings it within the sit option with the benefit from standing up every half hour for five minutes to stretch out her neck. And is that incorporated in the ALJs? Where does it come in the hypothetical? In the hypothetical or in the residual functional capacity? Well, in the question to the VE. Sure. And unfortunately, the transcript of the hearing is over to the side, and I can get it. Sure. So I think that starts on like ER 633, 635. Thank you, Your Honor. Then over to 636. And so I'm looking at the transcript or the evidence of record, page 635. She'd look at a sit-stand occupation and give the individual an opportunity to change position, not at will or not frequently, but with some ability to change position. So how does that incorporate the five minutes? Even under the sit restrictions, the benefit from standing up every half hour for about five minutes. Right. So the interpretation is that if she needs a rest from sitting or walking, she can sit. If she needs a rest from sitting, she can stand. So just to clarify, so the first statement is about her ability to stand or walk, and then Dr. White, she says, with respect to the stand or walk, I guess, because it comes right after that, she needs to rest every half hour for five minutes. And then it says she can sit without restriction, and then says she has to be able to stretch her neck. So your reading of this is that the statement that she may need rest every half hour relates solely to the stand and or walk? Yes, Your Honor. Okay. So the ALJ could reasonably read that section as saying the rest for five minutes from standing or walking. Yes, Your Honor. And for sitting, she would need to be able to adjust her position to stretch her neck or back. Yes, Your Honor. Okay. I understand that now. Thank you. And furthermore, these are actually not definitive restrictions, as we point out in our brief. She may need to stand or walk or may need to rest, given the possible degenerative joint disease. And as we discussed in our brief, the degenerative joint disease was actually discredited by subsequent objective findings. For example, tests ultimately showed that the reason for the recommendation, the degenerative joint disease, was unremarkable. An essentially normal CAT scan of the neck, only mild degenerative exam of the lumbar spine, essentially negative exam of the lumbar spine, the degenerative changes are absent normal bone scan. So given that the extra layer of this actually being a recommendation that was then disproven, the ALJ appropriately found that Dr. White, incorporated Dr. White's opinion and rationally interpreted the record to find that a sit-stand option would be acceptable. I leave it to Your Honors, whether you would like me to continue discussing this brief or whether you would like us to submit. Let's see if there's any questions. I don't see any other questions. Okay, thank you. Have a good morning. Thank you. Thank you. Okay, so what this comes down to, I believe, is whether she's sitting during the five-minute rest period or whether she's lying down or whether she's standing up, the issue is, is she continuing to work during that five-minute break or is she taking a break from work while she's resting? And the issue is that we don't know what Dr. White actually meant by that, and the only way to clarify that is to recontact the doctor and ask that question. So I guess what the government is saying, as I'm now understanding, is that the doctor's first statement about limitations is that she could stand and or walk for six hours during an eight-hour day. So that's the first one. And then says, but she couldn't stand or walk without resting every half hour. But there's nothing in this section about working or not working for any of these restrictions. It's just about those functional limitations. So what would be the implication that the rest would mean no work at all as opposed to just resting from standing or walking? In other words, sitting down. Well, in my reading of it, the doctor separated out how often she could stand and how often she could sit. And the resting, the need to rest, was a separate limitation. Was there any indication that, in the record, that would limit her ability to work while she was sitting? I mean, in other words, if it's a limitation from standing and walking, then I'm not sure what would be the support for saying she couldn't do anything at all while she was resting from standing and walking. Well, she also has other impairments, including post-surgical wrist pain and post-surgical breast cancer pain and fatigue and fibromyalgia. So it could be pain or fatigue for many of those other conditions that would interfere with her ability to continue working during that period. Okay, and I know there's a dispute about whether the ALJ correctly discredited those issues or not. Do you mean the severe impairments? Right. So like the fibromyalgia, the ALJ said it was not supported by the record. Well, on one hand, the ALJ found that it was a severe medically determinable impairment at Step 2. And then later on, in discussing Ms. Annis' credibility, the ALJ debated back and forth about whether fibromyalgia was legitimate or not. And so we had conflicting findings from the ALJ. Thanks. If there are no further questions, we'll submit. No, there are none. Thank you very much. Thank you. We appreciate your arguments, counsel, on the matter submitted.
judges: Fisher, Paez, Ikuta